## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

SUPERHUMAN INC.,

        Plaintiff,

v.

THERMOLIFE INTERNATIONAL, LLC,

        Defendant.

_____/

## <u>COMPLAINT</u>

Plaintiff Superhuman Inc. ("Superhuman" or "Plaintiff"), by its undersigned attorneys, for its complaint against Thermolife International, LLC ("Thermolife" or "Defendant"), alleges as follows:

## <u>NATURE AND BASIS OF THE ACTION</u>

1.    This is an action arising under the Declaratory Judgment Act, 28 U.S.C. § 2201 and the patent laws of the United States, Title 35 of the United States Code seeking declaratory judgment of non-infringement and invalidity with respect to U.S. Patent No. 8,455,531 (the "'531 Patent" or "Asserted Patent"). A copy of the '531 Patent is attached hereto as Exhibit A.

2.    In addition, this is an action for unfair competition, trade libel, defamation, tortious interference, and violation of the Florida Deceptive and Unfair Trade Practices Act, and False or Misleading Representation and Product Disparagement Pursuant to 15 U.S.C. § 1125, based upon Thermolife's bad faith and unjustified conduct with respect to Superhuman's products and Amazon.com.

3.      Thermolife filed several complaints with Amazon alleging that certain of Superhuman's pre-workout supplement products infringe the '531 Patent and requesting that Amazon take down Superhuman's listings for these products on Amazon.com (the "Takedown Notices").  As a result, Amazon sent corresponding Policy Violation Notices to Superhuman and deactivated (i.e., removed) Superhuman's listings for these products.  Thermolife's Takedown Notices were in bad faith and unjustified.  The '531 Patent is invalid, as Thermolife is well aware based upon a prior *inter partes* review that was filed against the '531 Patent.

4.      As described further below, all claims of the '531 Patent require a "nitrate sale compound" or "non-ester nitrate compound."  The Superhuman products that Thermolife has accused of infringement are non-nitrate supplements.  Indeed, they are specifically formulated to boost nitric oxide *without* including nitrates as an ingredient like other supplements.  Thermolife knows the '531 Patent could not possibly be infringed by non-nitrate products such as Superhuman's.  Thermolife has nevertheless attempted to use the '531 Patent to damage Superhuman in an effort to extract "royalty" payments.

5.      Thermolife has an established reputation as a vexatious litigant and an established track record of attempting to exploit the Amazon takedown process.  *ThermoLife Int'l, LLC v. GNC Corp.*, 922 F.3d 1347, 1355 (Fed. Cir. 2019) (ThermoLife and counsel brought "frivolous claims," and their "motivation was seemingly to extract nuisance-value settlements"); *BPI Sports, LLC v. ThermoLife Int'l, LLC*, No. 19-60505-CIV-SMITH, 2021 WL 2946170, at *2 (S.D. Fla. July 14, 2021) (adopting magistrate judge's report and recommendation and sanctioning ThermoLife where its owner, Ron Kramer, "committed a fraud upon the Court when [he] knowingly fabricated evidence to advance his case and repeatedly attempted to obstruct discovery of that fraud"); *Thermolife Int'l, LLC v. Human Power of N Co.* No. 6-21-CV-00144-

ADA, 2021 WL 6303232, at *1 (W.D. Tex. Dec. 21, 2021) ("ThermoLife shall refrain from taking any action to further pursue evaluation through Amazon's Patent Evaluation Process any of the patents at issue already pending in this case.").

6.      Thermolife's goal with respect to Superhuman is clear: force Superhuman to pay an unjustified "royalty" (i.e., ransom) to Thermolife, or to destroy Superhuman's business by improperly and unlawfully using third-party Amazon's takedown process to remove Superhuman's products from Amazon's website.

7.      Accordingly, Superhuman has been forced to bring this action to free itself from Thermolife's unwarranted allegations of patent infringement and to seek relief from Thermolife's tortious and harmful practices.

## THE PARTIES

8.      Superhuman is a Delaware corporation having its principal place of business at 1200 Brickell Avenue, Suite 1950 #1012 Miami, FL 33131.

9.      Defendant Thermolife is an Arizona Limited Liability Company, having its principal place of business at 1334 E. Chandler Blvd, #5-D76, Phoenix, Arizona 85048.

## JURISDICTION AND VENUE

10.      This action arises under the Declaratory Judgment Act of 28 U.S.C. § 2201 *et seq.*, and the laws of the State of Florida.

11.      Venue is proper in this jurisdiction pursuant to 28 U.S.C. §§ 1391 and/or 1400.

12.      This Court has subject matter jurisdiction over the federal law claims in this action under 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

13.      This Court has supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367(a).

3

14.     This Court has personal jurisdiction over the Defendant pursuant to Fla. Stat. § 48.193(1)(a)(2) and (6) because, as shown herein, (i) it has advanced and directed its anti-competitive campaign against Plaintiff in Florida after it wrongfully initiated the Amazon takedown process claiming, without any basis, that Plaintiff infringed upon the Asserted Patent and (ii) after Defendant alleged that Plaintiff had infringed upon the Asserted Patent by making, using, selling, offering to sell, and/or importing the infringing goods in, from, and into the state of Florida, Defendant's improper actions caused, and continue to cause, Plaintiff significant legal and business consequences in Florida.

15.     In addition, by instituting the Amazon takedown process against Superhuman, which has its principal place of business in the Southern District of Florida: (1) Thermolife purposefully directed enforcement activities at the Southern District of Florida, (2) this suit arises out of and relates to Thermolife's activities within the Southern District of Florida and (3) the assertion of personal jurisdiction over Thermolife by the Southern District of Florida is reasonable and fair. *See Snaprays v. Lighting Def. Grp.*, 100 F.4th 1371, 1375–78 (Fed. Cir. 2024) (holding that patentee who submits an infringement claim to Amazon is subject to jurisdiction in the home district of the accused infringer). Therefore, the Southern District of Florida has specific personal jurisdiction over Thermolife.

16.     Thermolife's actions give rise to a substantial, immediate, real, and justiciable controversy between Superhuman and Thermolife. A judicial declaration is necessary to determine the parties' respective rights.

## BACKGROUND AND FACTS

17.     Superhuman was founded in 2017 by Troy Adashun and Jordan Fares, who were frustrated with the realities of the fitness industry, including the fact that most brands were mass-marketing underdosed, dirty supplements with no purpose beyond driving sales. Superhuman

was created to serve the fitness industry with better and more innovative products.  Since 2017, Superhuman has grown and has now served over 2.4 million customers.

18.     Superhuman sells a variety of fitness supplements, including its Superhuman Pre and Superhuman Extreme supplements:

 

(the "Accused Products" or "Superhuman Supplements").

19.     Superhuman sells the Accused Products and other products through a variety of retail channels including brick and mortar, and on online platforms. Each year, Superhuman sells a substantial amount of its inventory on Amazon.com.  Prior to the Takedown Notices, Amazon.com accounted for approximately 40% of Superhuman's total sales of the Accused Products.

20.     Superhuman has sold the Accused Products on Amazon since 2021.

21.     Defendant Thermolife does not sell products to consumers, but sells a nitrate-based nitric oxide-boosting ingredient called NO3-T (arginine nitrate).  Thermolife holds a

5

patent portfolio, and makes money by forcing companies wishing to market supplement products to purchase non-exclusive sub-licenses from Thermolife.[1]

22.    One of the patents owned by Thermolife is the '531 Patent. The '531 Patent relates generally to "amino acid compositions." Ex. 1. The claims of the '531 Patent include formulations comprising at least one nitrate salt compound and at least one isolated amino acid compound that is separate from the nitrate salt compound.

23.    The '531 Patent has been through at least two *ex parte* reexaminations at the U.S. PTO, during each of which the claims of the '531 Patent were significantly amended. The reexamination certificates showing the claims of the current '531 Patent are appended to Ex. 1. As an example, Claim 62 of the '531 Patent states:

> **62.** A solid supplement formulation comprising:
>
> at least one non-ester nitrate compound; and
>
> at least one isolated amino acid compound selected from the group consisting of Agmatine, Beta Alanine, Citrulline, L-Histidine, Norvaline, Ornithine, Aspartic Acid, Cysteine, Glycine, Lysine, Methionine, Praline, Tyrosine, and Phenylalanine,
>
> wherein the at least one isolated amino acid compound is a separate compound than the at least one non-ester nitrate compound.

24.    Each and every current claim of the'531 Patent requires a "non-ester nitrate compound" or a "nitrate salt compound."

25.    On September 10, 2024, Superhuman received notices that Thermolife had filed claims with Amazon, alleging that Superhuman's Pre and Extreme Preworkout supplements infringe the '531 Patent. Exs. 2 and 3.

---

[1] According to Docket Navigator, Thermolife has been involved in 161 patent cases and has a "win rate" of 0.0%, meaning that it has "lost" or settled every case it has brought. Ex. 4.

26.     The notices do not specially identify which claim or claims of the '531 Patent were allegedly infringed.

27.     On September 17, 2024, Superhuman sent a letter to Thermolife demanding the immediate withdrawal of the Takedown Notices. Ex. 5.  This letter stated "[i]f ThermoLife has evidence to support an alleged breach of its patent through SuperHuman's product, please immediately provide evidence supporting the same." *Id.*  Thermolife has refused to provide any evidence for its allegation of infringement.

28.     On or about 19, 2024, Ron Kramer of Thermolife had a call with the CEO of Superhuman.  During the call, Thermolife demanded that Superhuman pay a "royalty" via a license agreement to resolve the matter.  Superhuman again requested that Thermolife provide evidence for its claim that the Accused Products meet the limitations of the '531 Patent, but Thermolife stated that it would only provide such evidence after Superhuman conceded to Thermolife's demands.

29.     On September 18, 2024, Plaintiff submitted a response to Amazon explaining that there was no infringement.  Amazon responded only with a message that stated, "We completed our evaluation of your submission.  We do not have enough information to remove the violation at this time." Ex. 6.

30.     For one specific listing of the Accused Products, Amazon reinstated the listing on September 19, 2024.  However, on September 26, 2024, that listing was again deactivated by Amazon in response to a Takedown Notice from Thermolife.  Ex. 7.

31.     On information and belief, Thermolife did not test the Accused Products before submitting the Takedown Notices and had no good faith belief that the Accused Products meet

the requirement of a "non-ester nitrate compound" or a "nitrate salt compound."  As a result, Thermolife's Takedown Notices were and are objectively baseless.

32.     Following the Takedown Notices, Superhuman had each of the Accused Products tested for nitrates by Harken Research.  Harken Research is a research laboratory accredited by the ANSI National Accreditation Board and an ISO/IEC 17025 certified laboratory.  Harken Research specializes in testing of consumer products, including dietary supplement products. *See* https://harkenresearch.com/tests/supplements/.

33.     Harken Research's Certificate of Analysis for the Superhuman Pre product showed no detected nitrate.  Ex. 8.

34.     Harken Research's Certificate of Analysis for the Superhuman Extreme product showed no detected nitrate.  Ex. 9.

35.     Because there is no nitrate in the Accused Products, there can be no "nitrate salt compound" and no "non-ester nitrate compound."

36.     Plaintiff has and will continue to suffer reputational harm as a result of the Takedown Notices. Before the Takedown Notices, Plaintiff had created and maintained a high ranking for the Accused Products on the Amazon platform, which utilizes a complex algorithm to determine where products appear in search results. The key factors that influence the valuable Amazon product rankings include sales velocity, conversion rate, stock availability and click-through rate (amongst other factors). These performance factors and sales history on the Accused Products have been severely negatively affected due to the Takedown Notices, which has and will continue to reduce the ranking values.

37.     Superhuman has expended considerable costs in marketing and product development to cultivate valuable consumer following, goodwill, and recognition, along with a high Amazon performing rankings.

38.     Online market share and rankings on Amazon.com can take months to gain and are based upon algorithms that take into account consecutive sales and sales velocity. Products are thus ranked higher, or near the top of the search, for products with ongoing and positive sales. Plaintiff has invested significant resources, time, and money into improving and maintaining its Amazon ranking in order to be highly placed in Amazon's ranking system for the Accused Products.

39.     As a result of the Takedown Notices and the deactivated listings for the Accused Products, there is now a significant and growing time period of no sales for the Accused Products on Amazon. This has a negative effect on the rankings of the Accused Products. If and when Plaintiff is able to reactivate its listings, it will once again have to spend significant time and money to recapture its high ranking in order to once again be competitive in the pre-workout supplement market, and it may never be able to fully restore its ranking and goodwill. If Thermolife's deactivations are allowed to persist, this reputational and business harm cannot be recouped.

40.     In addition, Superhuman has allocated significant resources to the creation and growth of a subscription-based sales program through their Amazon channel for the Accused Products. This subscription model allows customers to automatically purchase and receive the Accused Products on a regular interval (primarily monthly cycles). As a result of the Takedown Notices and the deactivation of listings for the Accused Products, customers have not had their subscriptions filled.

41.     These subscription agreements will be terminated because Superhuman is prevented from supplying the subscribed-to products. Subscription-based customers are incentivized by Amazon to try alternative products when subscribed products are unavailable.

42.     As a result, Thermolife's Takedown Notices have caused Superhuman to lose extremely valuable subscriber customers for the Accused Products and the associated sales of Accused Products to these customers.

43.     On information and belief, the actual purpose of Thermolife submitting the Takedown Notices was to unfairly remove Plaintiff's listings from Amazon in order to unfairly extract royalty payments from Superhuman.

44.     As of the filing of this Complaint, Defendant has not withdrawn its Takedown Notices or recanted its allegation that the Accused Products infringe the Asserted Patent.

45.     Plaintiff's continued use, selling, marketing, and sales of the Accused Products therefore raise a present case and controversy.

**COUNT I**
**Declaratory Judgment of Non-Infringement of the '531 Patent**

46.     Superhuman incorporates and re-alleges paragraphs 1 through 45 as if fully set forth herein.

47.     Thermolife is the owner of the '531 Patent.

48.     By submitting the Takedown Notices, Thermolife has taken the position that Superhuman infringes at least one claim of the '531 Patent.

49.     Superhuman has not infringed and does not infringe any claim of the '531 Patent, either directly or indirectly, contributorily or by inducement, literally or under the doctrine of equivalents, or in any manner whatsoever.

50. For example, and without limitation, Superhuman's Superhuman Supplements (in all flavors and sizes), alone or in combination, do not infringe the '531 Patent directly or indirectly, contributorily or by inducement, literally or under the doctrine of equivalents, or in any manner whatsoever, at least because these Accused Products do not satisfy the "non-ester nitrate compound" or "nitrate salt compound" limitation.

51. An actual controversy exists between Superhuman and Thermolife as to Superhumans's non-infringement of the '531 Patent as evidenced by Thermolife's engagement of the Amazon takedown process and allegation of infringement.

52. A judicial decision is necessary and appropriate so that Superhuman may ascertain its rights with respect to the '531 Patent.

53. Superhuman seeks, and is entitled to, a declaration from this Court that Superhuman has not infringed and does not infringe any claim of the '531 Patent, either directly or indirectly, contributorily or by inducement, literally or under the doctrine of equivalents, or in any manner whatsoever.

**COUNT II**
**Declaratory Judgment of Invalidity of the '531 Patent**

54. Superhuman incorporates and re-alleges the allegations of paragraphs 1 through 45 as if fully set forth herein.

55. The '531 Patent is invalid under at least 35 U.S.C. §§ 102, 103, and 112.

56. For example, each and every claim limitation of the '531 Patent is anticipated and/or obvious under §§ 102 and 103 because the prior art discloses and/or renders obvious to one of ordinary skill in the art the limitations of the claims of the '531 Patent.

57. For example, U.S. patent No. 3,552,978 ("Inklaar") anticipates and/or renders obvious the claims of the '531 Patent.

58.     An actionable and justiciable controversy exists between the parties regarding the validity of the '531 Patent.

59.     A judicial declaration is necessary to determine the parties' respective rights regarding the '531 Patent.

60.     Plaintiff is entitled to a judgment declaring that the claims of the '531 Patent are invalid under 35 U.S.C. §§ 102, 103, and/or 112.

**COUNT III**
**Violation of the Florida Deceptive and Unfair Trade Practices Act**

61.     Superhuman incorporates and re-alleges the allegations of paragraphs 1 through 45 as if fully set forth herein.

62.     Defendant's actions with Amazon, including the initiation of the Amazon takedown process regarding Plaintiff's Accused Products, amount to unfair methods of competition in commerce which has resulted in injuries to Plaintiff.

63.     Defendant wrongfully, deceptively, and unfairly asserted the Asserted Patents against the business operations and product listings of Plaintiff on Amazon.com through the Takedown Notices, causing those products to be delisted. This resulted in substantial reputational and economic damages to Plaintiff through: (a) disabled product listings; (b) lost product sales; (c) reputational damage to Plaintiff's Amazon accounts, and; (d) other damages, including actual damages, to the product listings, inventories, and Plaintiff's business.

64.     Defendant has demonstrated that it will continue its campaign of unfair business practices through its attempts to weaponize the Amazon takedown process.

65.     Defendant's actions have forced Plaintiff's products from its primary channel of such goods in the marketplace, thereby causing injury to consumers through higher prices and

reduced product purchase alternatives in violation of the Florida Deceptive and Unfair Trade Practice Act.

66.     As a result of Defendants' deceptive and unfair conduct, Plaintiff has suffered damages, including actual damages.

## COUNT IV
## Common Law Unfair Competition

67.     Superhuman incorporates and re-alleges the allegations of paragraphs 1 through 45 as if fully set forth herein.

68.     Thermolife's conduct amounts to unfair competition under the common law of the state of Florida, which is the umbrella for all statutory and non-statutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters.

69.     Thermolife engaged in unfair competition by submitting the Takedown Notices to Amazon without a good faith basis, and with knowledge that the '531 Patent is invalid. Thermolife's Takedown Notices had the effect of deceiving Amazon into believing the Accused Products violate Amazon's policies.  And this takedown is likely to lead to consumers incorrectly believing that Superhuman's products violate the intellectual property rights of a third party when, in fact, they do not.

70.     Plaintiff Superhuman's business is injured due to Thermolife's unfair competition acts.

71.     Thermolife's acts diminished Superhuman's ability to make sales. Amazon's removal of Superhuman's listings have caused, and continue to cause, Superhuman to lose substantial sales.

**COUNT V**
**Trade Libel**

72.     Superhuman incorporates and re-alleges the allegations of paragraphs 1 through 45 as if fully set forth herein.

73.      Thermolife communicated a falsehood to third-party Amazon when it submitted the Takedown Notices of infringement because the '531 Patent is not infringed by the Accused Products and because the '531 Patent is invalid, it cannot support a claim of infringement.

74.     Thermolife, knew or reasonably should have known that its Takedown Notices would result in Amazon delisting Superhuman's products and not doing business with Superhuman with respect to the Accused Products.  In fact, causing Amazon to cease doing business with Superhuman with respect to the Accused Products was the entire intent of sending the Takedown Notices.

75.     Thermolife's false claim of infringement in the Takedown Notices played a material and substantial part in inducing Amazon to cease doing business with Superhuman with respect to the Accused Products.  In fact, it was the entire cause of Amazon's actions.

76.     As a result of Thermolife's falsehood, Superhuman has suffered special damages in the form of lost sales and profits.  Specifically, Superhuman has lost at least $384,177 in sales of the Accused Products that would have been made on Amazon.com but for Thermolife's false statement.

77.     Prior to Thermolife's false statement, Superhuman's sales of the Accused Products on Amazon were $4,451,821 through August (i.e., January through August), which amounts to approximately $556,447 per month and $18,294 per day.  After Thermolife's false statements induced Amazon to remove the Accused Products, these sales have been entirely lost. Using just this past-performance data, which does not take into account increasing sales trends,

14

Superhuman has lost at least $384,177 in sales as a result of Thermolife's Takedown Notices. This number also does not account for the damage to Superhuman's Amazon rankings and lost subscribers.

78.     When Amazon provided the Policy Violation Notices that led to the listing deactivations, it also provided Amazon's estimate of the annualized "At-risk" sales amount for each Accused product.  The At-risk sales amount is the amount of sales Amazon believes will be lost as a result of the alleged policy violations and deactivations.  Amazon's At-risk amount estimates are based on the sales data and trends available to Amazon.  The total At-risk sales amount for the Accused Product was $8,550,849, which amounts to approximately $712,570 per month, $164,439 per week, and $23,426 per day.  Using Amazon's own estimates, Superhuman has lost at least $491,946 in sales as a result of Thermolife's Takedown Notices.  This number also does not account for the damage to Superhuman's Amazon rankings and lost subscribers.

79.     Thermolife's false statements have also directly affected Superhuman's Subscribe and Save ("SnS") subscriber base. The Accused Products had at least 4,654 active subscribers prior to Thermolife's Takedown Notices.  Each such subscriber had an average monthly revenue from these subscribers of approximately $85,000, which was a stable and predictable revenue stream.  Due to the Accused Products' unavailability, subscribers have been unable to receive their regular shipments, resulting in canceled subscriptions.  The loss of valuable subscribers has and will deprive Superhuman of repeat customers that provide reliable revenue, contribute to Amazon rankings, and are likely to generate additional customer recognition and goodwill by word of mouth as long-term users of the Accused Products. Based conservatively on the year-to-date revenue from the SnS subscribers of the Accused Products Superhuman estimates losses of $1,020,000 per year based on lost SnS subcribers.

80.     Based on the foregoing, Thermolife is liable for trade libel under Florida law.

## COUNT VI
## Defamation

81.     Superhuman incorporates and re-alleges the allegations of paragraphs 1 through 45 as if fully set forth herein.

82.     Thermolife published a false statement when it submitted the Notice of infringement to Amazon.com.  The statements contained in the Takedown Notices were false because the '531 Patent is not infringed by the Accused Products and cannot be infringed because the '531 Patent is invalid.

83.     These false statements were about Superhuman and its products.

84.     Thermolife's defamatory statement is of a *per se* character because this statement is one which when considered alone tends to subject Superhuman to distrust, ridicule, contempt or disgrace among customers who purchase pre-workout fitness supplements, and such statement injured Superhuman in its trade or profession.

85.     Thermolife's false claim induced Amazon to remove the listings for the Accused Products, causing injury to Superhuman in the form of lost sales.

## COUNT VII
## False or Misleading Representation and Product
## Disparagement Pursuant to 15 U.S.C. § 1125

86.     Superhuman incorporates and re-alleges the allegations of paragraphs 1 through 45 as if fully set forth herein.

87.     This is a claim for false or misleading representation of fact, unfair competition, and product disparagement under 15 U.S.C. § 1125(a).

88.     Superhuman has a commercial interest in its commercial and business reputation.

89.     Superhuman has established a business reputation as a popular and trusted seller of fitness supplements on Amazon's online marketplace.

90.     Thermolife knowingly made false, misleading, disparaging and defamatory statements in commerce through the Takedown Notices to Amazon relating to Superhuman's Superhuman Supplement products. These statements actually deceived Amazon and are likely to deceive and confuse the public (i.e., Amazon's marketplace users) into believing that Plaintiff's products violate patent rights (or may violate patent rights when used by customers), thereby materially affecting their decision and ability to purchase Superhuman's products.

91.     Thermolife's Takedown Notices were designed to advance its business interests by removing Superhuman's listings from the Amazon marketplace, which delisting would force Superhuman out of business if it refused to pay an unjustified royalty to Thermolife.

92.     Thermolife made the above-referenced false and disparaging statements in commercial promotion of Thermolife's only asset (patent rights) in order to unfairly compete with Superhuman.

93.     Defendants' false and misleading representations were sufficiently disseminated to actual and prospective customers by way of the Takedown Notices so as to constitute advertising.

94.     Defendants' false and misleading representation of Plaintiff's alleged infringement have misled, confused and deceived customers and prospective customers as to Plaintiff's reputation. Further, these misrepresentations have the capacity to continue misleading, confusing, and deceiving Plaintiff's customers and prospective customers.

95.     The false and misleading representations had a material effect on Plaintiff's customers' and prospective customers' decisions to do business with Plaintiff because, as a direct

result of Defendants' Notices, Amazon has replaced customer visibility of products offered by Superhuman with those offered by third-party sellers with higher performance ranks.

96.     Defendants made these false and misleading representations in interstate commerce and these false and misleading representations affect interstate commerce.

97.     On information and belief, Defendant lacked a basis for alleging infringement by the Accused Products in the Takedown Notices submitted to Amazon, and Defendants acted with the intent that the Accused Listings be removed from Amazon, prohibiting consumers from purchasing Plaintiff's products in an effort to damage Plaintiff and extract unwarranted "royalty" payments.

98.     Plaintiff's injuries fall within the zone of interest protected by the Lanham Act because Defendants' false advertising and disparaging misrepresentations have caused Plaintiff to suffer a loss of goodwill, a loss of sales, and damage to its commercial and business reputation.

99.     Defendants' wrongful acts as alleged in this Complaint constitute false or misleading representation of fact, unfair competition and product disparagement under 15 U.S.C. § 1125(a).

100.    The damage to Plaintiff's economic and reputational injuries were directly caused by Defendants' false and misleading representations.

101.    As a direct and proximate result of Defendants' actions, constituting false or misleading representation of fact, unfair competition and product disparagement, Plaintiff has been damaged and is entitled to monetary relief in an amount to be determined at trial.

102.     In addition, as a direct and proximate result of Defendants' actions Plaintiff has

suffered and continues to suffer great and irreparable injury, for which Plaintiff has no adequate

remedy at law, including loss of goodwill and Amazon seller ranking.

103.     Defendants will continue their actions, constituting false or misleading

representation of fact, unfair competition, and product disparagement, unless enjoined by this

Court.

**COUNT VIII**
**Tortious Interference With Prospective Economic Advantage**

104.     Superhuman incorporates and re-alleges the allegations of paragraphs 1 through

45 as if fully set forth herein.

105.     A business relationship exists between Superhuman and Amazon and

Superhuman had every expectation that this relationship would continue in full, including with

respect to the Accused Products.

106.     ThermoLife had actual knowledge of the business relationship between

Superhuman and Amazon, which is demonstrated by ThermoLife's submission to Amazon of the

Takedown Notices.

107.     Thermolife submitted the Takedown Notices without having a sufficient basis for

alleging infringement and despite having knowledge that the Accused Products did not infringe

any claims of the '531 Patent and that the '531 Patent is invalid.  Thermolife intended for

Amazon to remove the listing for the Accused Products and thus Thermolife's Takedown

Notices were an unjustified and an intentional interference with Superhuman's relationship with

Amazon.

108.     Superhuman has been damaged by Thermolife's interference because Amazon

removed the listing for the Accused Products and Superhuman has lost significant sales each day

19

since the listings were removed. In addition, Superhuman's Amazon seller ranking has been damaged, and Superhuman's valuable brand, reputation, and goodwill has been, and will continue to be irreparably damaged by the listing removals and unavailability of the Accused Products on Amazon.

109.    Superhuman has been forced to expend significant amounts of time, effort, and money on legal fees to defend against Thermolife's unjustified conduct.

110.    Superhuman is entitled to damages for ThermoLife's tortious conduct

## JURY DEMAND

Superhuman demands a trial by jury as to all claims and all issues properly triable thereby.

## REQUEST FOR RELIEF

WHEREFORE, Superhuman respectfully requests the Court enter judgment in its favor and against Defendant as follows:

A.    Declaring the Asserted Patent is invalid and unenforceable;

B.    Declaring that the Superhuman has not and does not infringe the Asserted Patent;

C.    Permanently enjoining the Defendant and its managers, members, officers, directors, employees, agents, licensees, representatives, affiliates, related companies, servants, successors and assigns, and any and all persons acting in privity or concert with any of them, from further acts of wrongful assertion of the Asserted Patent, including against Plaintiff;

D.    Ordering Defendant to affirmatively withdraw all Amazon takedown requests it has submitted to Amazon with respect to the Accused Products and take all other necessary steps to allow Superhuman to sell the Accused Products through Amazon.

E.      Finding that Defendant has violated Florida Deceptive and Unfair Trade Practices

Act, and awarding actual damages and Plaintiff's attorneys' fees and costs;

F.      Finding that Defendant has engaged in unfair competition in violation of the

common law of Florida;

G.      Finding that Defendant has engaged in trade libel in violation of the common law

of Florida;

H.      Finding that Defendant has engaged in defamation in violation of the common

law of Florida;

I.      Finding that Defendant has made a false or misleading representation and product

disparagement in violation of 15 U.S.C. § 1125;

J.      An award of pre-judgment and post-judgment interest and costs of this action

against Defendant;

K.      An award of damages, attorneys' fees, and costs to the fullest extent provided for

by United States statute and the common law of Florida, including exemplary and punitive

damages; and

L.      Granting any such other and further relief that the Court deems just and proper.


Dated: September 30, 2024                    Respectfully submitted,

                                             **Richard Guerra**
                                             Richard Guerra (Fla. Bar No. 689521)
                                             Email: rguerra@brickellip.com
                                             THE BRICKELL IP GROUP, PLLC
                                             1101 Brickell Avenue
                                             South Tower, Suite 800
                                             Miami FL, 33131
                                             Telephone: (305) 728-8831

*Attorneys for Superhuman, Inc.*

A. Colin Wexler
(*Pro Hac Vice* To Be Requested)
Robert D. Leighton
(*Pro Hac Vice* To Be Requested)
Paul J. Sauerteig
(*Pro Hac Vice* To Be Requested)
GOLDBERG KOHN, LTD.
55 E. Monroe, Suite 3300
Chicago, IL  60622
312-201-4000

*Attorneys for Superhuman, Inc.*